**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-84-DLB**

**DARWINS ALFONSO ARAQUE-MARQUEZ**                    **PETITIONER**


**v.**                    **MEMORANDUM OPINION AND ORDER**


**SAMUEL OLSON, et al.,**                    **RESPONDENTS**

**\* \* \* \* \* \* \* \* \* \***

## I.    INTRODUCTION

This matter is before the Court on Petitioner Darwins Alfonso Araque-Marquez's

Petition for Writ of Habeas Corpus (Doc. # 1). Respondents[1] having filed their Response[2]

(Doc. # 10), and Petitioner having filed his Reply (Doc. # 11) this matter is now ripe for

review. For the following reasons, the Court will **grant** the Petition.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Darwins Alfonso Araque-Marquez is a native and citizen of Venezuela.

(Doc. # 1 ¶ 1). He entered the United States on June 10, 2022. (Doc. # 10-2 at 2). Upon

his entry, Marquez was apprehended by U.S. Customs and Border Patrol ("CBP"). (Doc.

# 11 at 1). However, due to a lack of detention capacity, ICE released him on parole.

---

[1]     Petitioner files this action against Pamela Bondi, Attorney General of the United States; Samuel Olson, Field Office Director, Immigration and Customs Enforcement ("ICE"), Chicago Field Office; Kristi Noem, Secretary, U.S. Department of Homeland Security ("DHS"); and Mike Jansen, Sheriff ("Respondents"). (Doc. # 1 at 1).

[2]     The Response (Doc. # 11) was filed on behalf of Respondents Bondi, Noem, and Olson. Respondent Jansen failed to file a response in opposition to the Petition and the time for doing so has passed. Accordingly, the Court will consider only the arguments raised in the filed Response. (Doc. # 11).

(Doc. # 10-2 at 2). In January of 2023, DHS served Marquez with a Notice to Appear before an Immigration Judge ("IJ") for removal proceedings. (Doc. # 10-1 at 1). Over the following three years, Marquez resided in Joliet, Illinois, where he worked as a forklift operator at a Walmart distribution center. (Doc. # 1 ¶ 1-2). Marquez has a U.S.-citizen child who was born on January 28, 2026. (*Id.* ¶ 2). Marquez presently has an active application for asylum. (*Id.* ¶ 3).

On February 5, 2026, Marquez attended an annual ICE reporting meeting at the Broadview, Illinois facility. (*Id.*). At this meeting, ICE officials detained Marquez. (*Id.*). After his initial detention, ICE transferred Marquez—first to Clay County Jail in Brazil, Indiana and, subsequently, to the Campbell County Detention Center in Newport, Kentucky, where he remains. (*Id.* ¶ 5). ICE is presently detaining Marquez without the opportunity to seek bond. (*Id.* ¶ 8).

On February 21, 2026, Marquez filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. # 1). In his Petition, Marquez argues that he is being wrongly detained at the Campbell County Detention Center and requests that the Court order his immediate release.[3] (*Id.* ¶ 36). Marquez initially filed his Petition in the Northern District of Illinois. (Doc. # 4). However, because, at the time he filed his Petition, Marquez was detained at the Campbell County Detention Center, the case was ultimately transferred to this Court. (*Id.*). On March 2, 2026, the Court directed Respondents to respond to the Petition. (Doc. # 9). Respondents having filed their Response (Doc. #

---

[3]     Although the Petition seeks Marquez's "immediate release from custody," (Doc. # 1 ¶ 36), Marquez, in his Reply, requests an order from this Court "directing that Petitioner be afforded an opportunity for a bond hearing" in the alternative. (Doc. # 11 at 3). Respondents, in their Response, also argue that "the only appropriate remedy is a bond hearing before an Immigration Judge." (Doc. # 10 at 27 n. 10).

10) and Marquez having filed his Reply (Doc. # 11), the matter is ripe for the Court's review.

## III.    ANALYSIS

In his Petition, Marquez argues that his present detention violates the Immigration and Nationality Act ("INA") and deprives him of his right to due process under the Fifth Amendment.  (Doc. # 1 ¶¶ 26-31).  Specifically, Marquez contends that his detention is unlawful and therefore requires his immediate release or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226.  (*Id.* ¶  36; Doc. # 11 at 3).

### A.    Expiration of Parole

Before turning to Marquez's arguments regarding the INA and his Fifth Amendment rights, the Court must first address the issue of Marquez's parole.  Marquez was paroled into the country on June 10, 2022.  (Doc. # 10-2 at 2).  Under 8 C.F.R. § 212.5(e)(2)(i), the service of a charging document—such as a Notice to Appear—"will constitute written notice of termination of parole, unless otherwise specified."  *See also L.M.G. v. Almodovar*, No. 26-cv-00890 (MMG), 2026 WL 483183, at *2 (S.D.N.Y. Feb. 20, 2026) (finding that service of a Notice to Appear terminated a noncitizen's parole); *Quintero v. Francis*, No. 25-cv-10107 (MKV), 2026 WL 265921, at *6 (S.D.N.Y. Feb. 2, 2026) ("Thus, Petitioner's parole was effectively revoked on written notice when she was served with the NTA on the day she was arrested.").  Respondents argue that when DHS officials served Marquez with a Notice to Appear in January of 2023, Marquez's parole was terminated.  (Doc. # 10 at 2).  However, Marquez was not taken into custody at the time he was served with a Notice to Appear.  (*Id.*).  Indeed, Marquez's detention did not begin until February 5, 2026—more than three years later.  (*Id.*).  Because Marquez was

3

initially paroled into the United States as an "arriving alien," the Court must determine his status at the time ICE took him into custody in February of 2026.

The expiration of parole pursuant to 8 U.S.C. § 1182(d)(5)(A) returns the parolee "to the custody from which he was paroled." *Linarez v. Stamper*, No. 1:26-cv-101-JAW, 2026 WL 592294, at *5 (D. Me. Mar. 3, 2026). However, "district courts across the country have consistently held that the expiration of § 1182 parole does not require treating the noncitizen as if they had never been paroled in the first place." *Id.* Instead, "Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subject to expedited removal." *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065, 2025 WL 3314420, at *17 (E.D.N.Y. Nov. 28, 2025). This Court and numerous other district courts have found that the expiration of parole does not return the undocumented immigrant to the status of an "arriving alien" at the threshold of the United States. *See, e.g., Bezkada v. Fields*, No. 26-cv-57-DLB, 2026 WL 696555, at *2 (E.D. Ky. Mar. 12, 2026); *Coal. For Human Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 85 (D.D.C. Aug. 1, 2025) ("[S]ection 1182(d)(5)(A) does not, as Defendants insist, say that parolees return, upon the termination or expiration of their parole, to 'the position of an applicant for admission standing at the threshold of entry."); *Walizada v. Trump*, No. 2:25-cv-768, 2025 WL 3551972, at * 15 (D. Vt. Dec. 11, 2025) (finding it "absurd" "unjust" and "counterintuitive" that the idea that the expiration of a petitioner's parole would place him in the "perpetual status as an 'arriving alien'"); *Linarez*, 2026 WL 592294, at * 6 ("The expiration of [the petitioner's] parole does not renew the requirement to return to a port of entry and undergo a new inspection or screening.").

4

It follows logically that once Marquez's parole expired, yet he remained in the country undetected, he would have similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having any clue as to their whereabouts.   Because the Court rejects any argument by Respondents that attempts to classify Petitioner as an "arriving alien" due to the expiration of his parole, the Court will analyze the facts of Marquez's Petition as if he is an undocumented immigrant who was not inspected at the border.

## B.    Relevant Framework

At its core, habeas provides "a remedy for unlawful executive detention" *Munaf v. Geren*, 553 U.S. 674, 693 (2008), available to "every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).  A district court may grant a writ of habeas corpus to any person who shows that he is detained within the court's jurisdiction in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c)(3).  The Supreme Court has recognized that habeas relief extends to noncitizens.  *See Rasul v. Bush*, 542 U.S. 466, 483 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States . . . Section 2241, by its terms, requires nothing more.").

Enacted in 1952, the Immigration and Nationality Act (INA) consolidated previous immigration and nationality laws and now contains "many of the most important provisions of immigration law."   U.S. Citizenship and Immigration Services, *Immigration and Nationality          Act          (July          10,          2019),* https://www.uscis.gov/lawsandpolicy/legislation/immigrationandnationalityact#:~:text=Th e%20Immigration%20and%20Nationality%20Act,the%20U.S.%20House%20of%20Rep

5

resentatives.  Relevant to Marquez's Petition, Congress has established two statutes, codified in Title 8, which govern detention of noncitizens pending removal proceedings— 8 U.S.C. §§ 1225 and 1226.

The first statute, 8 U.S.C. § 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  It states, in pertinent part:

> **(b)     Inspection of applicants for admission**
>
> **(2)     Inspection of other aliens**
>
> **(A)     In general**
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229(a) of this title.

8 U.S.C. § 1225(b)(2)(A).  Important to note, for purposes of this provision, "an alien who is an applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).

The second provision at issue, 8 U.S.C. § 1226, is titled "Apprehension and detention of aliens" and reads:

> **(a) Arrest, detention, and release**
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1)     May continue to detain the arrested alien; and
>
> (2)     May release the alien on—

> (A)    Bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . . .

8 U.S.C. § 1226(a).

Section 1226(c) of the INA was amended by Congress in January 2025 with the enactment of the Laken Riley Act, which added a new subsection under Section 1226(c), requiring mandatory detention in certain circumstances. Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025). The amendment added a two-step process, in which the Attorney General must detain a noncitizen if

> (1) they are inadmissible because they are in the United States without being admitted or paroled, obtained documents or admission through misrepresentation or fraud, or lacks valid documentation and
>
> (2) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

*Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *3 (W.D. Ky. Sep. 19, 2025) (quoting U.S.C. §§ 1226(c)(1)(E)(i)-(ii)).

The distinction between 8 U.S.C. §§ 1225 and 1226 lies at the heart of Marquez's Petition. Pursuant to 8 U.S.C. § 1226(a), noncitizens who are arrested and detained have the right to request a bond hearing before an IJ. Conversely, under 8 U.S.C. § 1225(b)(2)(A), all aliens deemed to be applicants for admission *must* be detained. As noted *supra*, Marquez, a noncitizen who has lived in the United States for over three years, has been detained by ICE and is being held at the Campbell County Detention Center. The question, then, is whether Marquez must be detained without a hearing

7

under § 1225(b)(2), or whether he has the right to request a meaningful bond hearing pursuant to § 1226.[4]

### C.   Statutory Interpretation

The basic facts of this case are not in dispute.  Rather, the first issue concerns which statute applies to Petitioner.  Marquez argues that he is being detained in the Campbell County Detention Center in violation of his Fifth Amendment due process rights. (Doc. # 1 ¶¶ 30-31).  Conversely, Respondents contend that Petitioner is properly detained pursuant to the mandatory detention scheme of § 1225(b)(2).  (Doc. # 10 at 10). Thus, the Court must determine whether § 1225(b)(2) applies to Marquez's detention. This determination raises a question of statutory interpretation.  In interpreting statutes, district courts must "use every tool at their disposal to determine the best reading of the statute."  *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 400 (2024).  Statutes must be given their "ordinary, contemporary, common meaning" *Walters v. Metro Edu. Enters., Inc.*, 519 U.S. 202, 207 (1997), while also being read "in their context and with a view to their place in the overall statutory scheme."  *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012).

The Court starts with the plain language of the statute and begins by looking at the first words one may read—the title.  A "[c]ourt gives each and every word meaning, and this includes the title."  *Barrera*, 2025 WL 2690565, at *4.  While section headings are not dispositive, "they are instructive and provide the Court with the necessary assurance that

---

[4]     The Court notes that the matter before this Court is *not* whether the executive branch has the authority to direct ICE/DHS to detain and deport noncitizens.  The question before the Court is a narrower one, to wit, whether those noncitizens—specifically Petitioner Marquez—are entitled to request a bond hearing before an IJ prior to their removal hearing pursuant to 8 U.S.C. § 1226(a) or must be mandatorily detained pursuant to 8 U.S.C. § 1125(b)(2)(A).

it is at least applying the right part of the statute in a given circumstance." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025); *see also Dubin v. United States*, 599 U.S. 110, 120-21 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.") (internal quotations and citations omitted).

Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for a hearing[.]"  Section 1226 is titled "apprehension and detention of aliens" with a focus on "arrest, detention, and release[.]"  Thus, the text of the titles indicate that § 1225 governs "arriving" noncitizens who are *presently* "seeking admission" into the United States,[5] while § 1226 focuses on the apprehension and detention of those noncitizens already present in the country.  *See Edahi v. Lewis*, No. 4:25-cv-129-RGJ, 2025 WL 3466682, at *7 (W.D. Ky. Nov. 27, 2025) ("The added word of 'arriving' supports the notion that the statute governs 'arriving' noncitizens, not those present already.").

Section 1225(a)(1) states that an "applicant for admission" is "an alien present in the United States who has not been admitted or who arrives in the United States."  Under § 1225(b)(2)(A) any applicant for admission who is "seeking admission" and "is not clearly and beyond a doubt entitled to be admitted" must be detained.  The analysis then, is twofold.  For a noncitizen to be mandatorily detained under § 1225(b)(2)(A), they must be an applicant for admission who is also seeking admission.  Other district courts have

---

[5]    This is supported by the text of § 1225, which focuses on limited and specific methods of entry, for example, via "crewman" or "stowaways," leading to the conclusion that "Section 1225 is much more limited in scope than the United States asserts."  *Barrera*, 2025 WL 2690565, at *4.

acknowledged that this "question is puzzling at first blush.  How can an 'applicant for admission' not 'seek admission?'" *J.G.O. v. Francis*, No. 25-cv-7233, 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025).  However, this question is answered by looking to the statutory definition.  To be an applicant for admission, "[a]ll that's needed is presence without admission—in other words, it applies to the great number of undocumented immigrants who currently live here."  *Id*.  By contrast, seeking admission "might mean something more than that—some active desire or process toward admission."  *Id*.  One's *status* as an "applicant for admission" under the definitional language of § 1225(a)(1) is distinct from the *act* of "applying for" or "seeking" admission.  Congress provided a clear definition of aliens who are "applicants for admission."  8 U.S.C. § 1225(a)(1).  And this definition turns on an individual's physical presence in the United States.  *Id.*  Thus, an alien present in the United States can qualify as an "applicant for admission" under § 1225 without also "seeking admission" by necessity.  Because Marquez is neither an "arriving alien" nor "seeking admission" into the United States, the mandatory detention provisions contained § 1225(b)(2) do not apply to him.

Respondents disagree with this reading and take the position that merely because Petitioner is an "applicant for admission" according to the INA, he is subject to the mandatory detention provisions of § 1225(b)(2).  (Doc. # 10 at 18).  Respondents' interpretation of § 1225(b)(2)(A), therefore, calls for mandatory detention of *every* noncitizen present in the United States who has not been lawfully admitted.  (*See id.* at 9 (Section 1225(b)(2) "requires detention of all applicants for admission")).  The Court finds this interpretation much too broad.  *See Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("[A]ccepting Respondents' one-size-fits-all

application of 1225(b)(2) to all aliens, with no distinctions, would violate fundamental canons of statutory construction.").

In reaching this conclusion, Respondents misconstrue, or ignore entirely, the phrase "seeking admission." The use of the present progressive term "seeking" "implies action." *Barrera*, 2025 WL 2690565 at *4; *see also Diaz v. Marinez,* 792 F. Supp. 3d. 211, 218 (D. Mass. 2025) ("[T]he phrase 'seeking admission[,]' [though] undefined in the statute[,] [] necessarily implies some sort of present-tense action."); *Edahi*, 2025 WL 3466682 at *8 ("Seeking means 'to go in search of' and is synonymous with 'pursue.'" (quoting Webster's Dictionary (11th ed. 2024))).

Furthermore, the INA defines the term "admission" as "the lawful *entry* of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Given that the word "entry" is left undefined by the INA, courts interpret it according to its "ordinary, contemporary, common meaning." *Star Athletica, LLC v. Varsity Brands, Inc.*, 580 U.S. 405, 414 (2017) (internal quotations omitted); *see also Gustafson v. Alloyed Co., Inc.*, 513 U.S. 561, 585 (1995) (Thomas, J., dissenting) ("The canon that we construe a statutory term in accordance with its ordinary or natural meaning applies only in the absence of a statutory definition." (cleaned up)). "That meaning is 'entering into . . . (a country),' which is '[t]o come or go in.'" *J.G.O.*, 2025 WL 3040142, at *3 (quoting *Entry*, OXFORD ENGLISH DICTIONARY (2d ed. 1989); *Enter*, OXFORD ENGLISH DICTIONARY (2d ed. 1989)).

Thus, it cannot be said that Marquez, a noncitizen who has resided in the United States for over three years, and who remained here undetected for years after his parole expired, is "actively seeking admission." *See id.* ("'[S]eeking admission' requires an alien

11

to continue to want to go into the country. The problem . . . is that [the petitioner] is already here; you can't go into a place where you already are.").  Furthermore, seeking lawful status or relief from removal is not the same as "seeking admission."  *See Sanchez v. Mayorkas*, 593 U.S. 409, 415 (2021) (observing that "[l]awful status and admission . . . are distinct concepts in immigration law: Establishing one does not necessarily establish the other").  Thus, a noncitizen present in the United States may seek lawful status without simultaneously seeking admission.  *Id.*  (noting that a noncitizen who received Temporary Protected Status was not therefore constructively admitted to the United States).

Numerous district courts have come to the same conclusion.  *See Barrera*, 2025 WL 2690565, at *4 ("Noncitizens who are present in the country for years, like [petitioner] who has been here 20 years, are not actively 'seeking admission.'"); *Lopez-Campos*, 2025 WL 2496379, at *7 ("There is no logical interpretation that would find that Lopez-Campos was actively 'seeking admission' after having resided here, albeit unlawfully, for twenty-six years."); *Ochoa Ochoa v. Noem*, No. 25-cv-10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025) ("In agreement with other district courts, this court rejects Respondents' expanded reading of 1225(b)(2) and the term "seeking admission.").  Likewise, the Seventh Circuit—the only circuit court to address the issue—agreed with this reading.  *Castañon-Nava v. U.S. Dep. Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) ("[p]ut another way, 'U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2).  It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)'") (emphasis in original) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).  To adopt Respondents'

interpretation of § 1225(b)(2)(A) would render the phrase "seeking admission" "mere surplusage by equating it to 'applicant for admission.'" *Ochoa Ochoa*, 2025 WL 2938779, at *6; *see also Castañon-Nava*, 161 F.4th at 1061 (noting that such a construction "would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction"); *J.G.O.*, 2025 WL 3040142, at *3 ("[T]his is just another example of the government's construction inviting surplusage into the statute. That Congress chose to include this additional phrase—'seeking admission' . . . suggests that it must mean something distinct."). The Court declines to adopt such an expansive reading of § 1225(b)(2)(A).[6]

Moreover, neither party contends that Petitioner's pending asylum application impacts whether he is "seeking admission" under § 1225(b)(2)(A). Even if they had, that fact is not dispositive because he did not "apply for asylum when []he was '*arriving*' to the United States, as the statute would require." *Edahi*, 2025 WL 3466682, at *8 (emphasis added). While the Court acknowledges that Petitioner was originally paroled into the United States, that parole has since expired and its original purpose is no longer relevant to the analysis. Rather, at the time he was detained, Marquez had been living in Illinois for more than three years. As such, "[t]here is simply no logical way to interpret [Petitioner] as 'arriving[.]'" *Edahi*, 2025 WL 3466682, at *8; *see also Santos Francos v. Raycraft*, No. 2:25-cv-13188, 2025 WL 2977118, at *7 (E.D. Mich. Oct. 21, 2025) ("And even if Respondent argues that [the petitioner] is 'seeking admission' because he applied for asylum . . . that was not done when he was 'arriving' to [the United States]. So the

---

[6]      The Court notes that in their Response, Respondents repeatedly references *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), an opinion from the Board of Immigration Appeals. Pursuant to the Supreme Court's decision in *Loper Bright*, courts "need not defer to any agency interpretation of law just because a statute is ambiguous." 603 U.S. at 412-413.

applicability of § 1225(b)(2)(A) would still be incorrect."); *Benitez v. Francis*, 795 F. Supp. 3d. 475, 488 fn. 7 (S.D.N.Y. Aug. 13, 2025) ("To the extent that Respondents might point to [the petitioner's] asylum application to argue that he continues to 'seek' something, what he seeks is not 'admission' or 'lawful entry' to the United States, but to obtain a lawful means to *remain* here."); *Navarrete v. Noem*, No. 4:25-cv-157-DJH, 2025 WL 3298081, at *2 (W.D. Ky. Nov. 26, 2025) ("The fact that [the petitioner] sought asylum almost a year after entering the United States [] does not render § 1225(b)(2) applicable because she did not apply at the border.").

The Court now turns to the plain language of § 1226, which controls the "apprehension and detention of aliens."  Section 1226(a) permits a bond hearing if an "alien" who was "arrested and detained" on a "warrant issued by the Attorney General" remains in detention "pending a decision on whether the alien is to be removed from the United States."  The plain meaning of the statute is clear and applicable to Marquez—an alien who was arrested and detained by ICE and remains in detention pending removal proceedings.  (*See* Doc. # 1).  This is further bolstered by the record.

That § 1225(b)(2)(A) applies to noncitizens seeking admission into the United States while § 1226 applies to those noncitizens who are already present in the United States comports with the broader structure and context of our immigration law.  *Castañon-Nava*, 161 F.4th at 161-62.  Indeed, "[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (noting that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those

14

who are within the United States after an entry, *irrespective of its legality*") (emphasis added).

Here, on the January 5, 2023, Notice to Appear issued to Petitioner, DHS stated that Marquez was "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."  (Doc. # 10-1 at 4).  Thus, by DHS's own admission, Marquez is not an "arriving alien."   This supports this Court's conclusion and reaffirms the Supreme Court's determination in *Jennings v. Rodriguez,* that § 1226(a) applies to aliens already present in the United States, while § 1225(b)(2)(A) applies to arriving aliens.  583 U.S. at 298, 303.   Respondent's new post hoc position is simply "impermissible."   *Dep't of Homeland Sec. v. Regents of the Univ. of Cal*., 591 U.S. 1, 22 (2020) (holding that "[t]he basic rule is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations").

Most compelling for this Court is the addition of the Laken Riley Act, signed into law in January 2025.  The Laken Riley Act, which was incorporated into § 1226(c), provides that noncitizens who have been charged with, convicted of, or admitted to committing various listed crimes, are subject to mandatory detention.  8 U.S.C. § 1226(c). If, as Respondents argue, Congress had intended for § 1225 to govern all noncitizens who are present in the country, regardless of when or where they were detained, then why did Congress even bother passing that legislation?  If Respondent's reading of § 1225 is correct, then the addition of the Laken Riley Act would be superfluous.  The Laken Riley Act added a mandatory detention requirement, "in an otherwise discretionary Section."  *Barrera*, 2025 WL 2690565, at *4.   As other courts have noted,

15

> [i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless and this Court, too, 'will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).

*Lopez-Campos*, 2025 WL 2496379, at *8 (quoting *Maldonado*, 2025 WL 237441, at *12); *see also id*. ("Respondents' interpretation of the statutes would render [the Laken Riley Act] superfluous); *Ariza v. Noem*, No. 4:25-cv-165-RGJ, 2025 WL 3722014, at *6 (W.D. Ky. Dec. 23, 2025) ("If Section 1225(b)(2)(A) governed certain noncitizens as the United States claims it does, the Laken Riley Act would have been redundant and unnecessary."); *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) ("Such an interpretation, which would largely nullify a statute Congress enacted this very year, must be rejected."); *Martinez v. Hyde*, 792 F. Supp. 3d. 211, 221 (D. Mass. 2025) ("[I]f, as the Government argue[s] ... a non-citizen's inadmissibility were alone already sufficient to mandate detention under section 1225(b)(2)(A), then the 2025 amendment would have no effect. This is a presumptively dubious result."); *Selvin Adonay E.M. v. Noem et al*, No. 25-cv-3975, 2025 WL 3157839, at *6 (D. Minn. Nov. 12, 2025) ("the presumption against superfluity is at its strongest because the Court is interpreting two parts of the same statutory scheme, and Congress even amended the statutory scheme this year when it passed the Laken Riley Act."). This Court agrees with its sister courts.

Respondents fail to elaborate when, if § 1225(b)(2) applies to *every single* noncitizen's detention proceeding, § 1226 would ever, if at all, come into play. The Court finds it difficult to conceive of a situation in which Congress would enact an insignificant superfluous statute for no other reason than to add words to the page. *See Stone v.*

16

*I.N.S.*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

Finally, pertinent legislative history reinforces the Court's conclusion. *See Loper Bright,* 603 U.S. at 386 ("[T]he longstanding practice of the Government—like any other interpretive aid—can inform [a court's] determination of what the law is."). Enacted in 1952, the INA "distinguished between aliens physically arriving in the United States and those who had entered the Country." Library of Congress, *Immigration Detention: A Legal Overview* (Sep. 16, 2019), https://www.congress.gov/crs-product/R45915#_Ref17891326. In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") which focused on whether the noncitizen "had been lawfully admitted into the country by immigration authorities." *Id*. Since the IIRIRA's enactment "the statutory framework governing detention has largely remained constant." *Id*. In applying the INA to detention proceedings, the Government has, for the past thirty years, consistently applied § 1226(a). It was not until July of 2025 when DHS/ICE announced a new policy, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" where it deemed all persons who entered the United States without inspection "applicants for admission" under § 1225, that the Government changed course. U.S. Customs and Border Protection, *Detention of Applicants for Admission*, (Sep. 18, 2025) https://www.cbp.gov/document/foia-record/detention-applicants-admission; *see also Lopez-Campos*, 2025 WL 2496379 at *5

17

("For the past 30 years, the Government has applied Section 1226(a)[.]" It is only "now that . . . they want the Court to declare that the application of Section 1226(a) is incorrect."). This sudden change contradicted the long-established understanding that § 1225(b) "applies primarily to aliens seeking entry into the United States" while § 1226(a) "applies to aliens already present in the United States." *Jennings*, 583 U.S. at 298, 303; *see also id*. at 288 ("Section 1226(a) sets out the default rule for those aliens [already present in the United States.]"). Thus, the enforcement history reflects a longstanding practice of applying § 1226(a) to noncitizens already residing in the country, which is "powerful evidence that interpreting [the INA] in that way is natural and reasonable[.]" *Abramski v. U.S.*, 573 U.S. 169, 202-203 (2014) (Scalia, J., dissenting).

"The plain language of the statutes, the overall structure, the intent of Congress, and over 30 years of agency action make clear that Section 1226(a) is the appropriate statutory framework … for noncitizens who are already in the country and facing removal." *Lopez-Campos*, 2025 WL 2496397, at *5. Therefore, the Court finds that Petitioner is not subject to § 1225(b)(2)(A). Rather, the facts of the case make clear that his detention is governed by § 1226(a).[7]

---

[7] The Court acknowledges that the Fifth Circuit Court of Appeals has reached the opposite conclusion. *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026). However, this decision provides, at most, persuasive authority. *See Wright v. Spaulding*, 939 F.3d 695, 699 (6th Cir. 2019) (noting that holdings of other circuit courts of appeal do not bind courts in the Sixth Circuit). And another Circuit Court has disagreed with the Fifth Circuit's reasoning—albeit in a different procedural context. *See Buenrostro*, 2026 WL 323330, at *4 n. 8 (recognizing the Seventh Circuit's conflicting decision in *Castañon-Nava v. U.S. Dep't. of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025)). The Sixth Circuit is poised to take up the statutory interpretation issue raised by Petitioner in *Lopez-Campos v. Raycraft*, Case No. 25-1965 (6th Cir. Oct. 27, 2025). Indeed, the Sixth Circuit held oral arguments in *Lopez-Campos* on March 18, 2026 pursuant to an expedited schedule. *See* Doc. # 42, No. 25-1965. In the absence of an authoritative decision from the Sixth Circuit Court of Appeals, the Court respectfully declines to adopt the Fifth Circuit's holding in *Buenrostro-Mendez*.

### D.    Due Process

Because the Court has concluded that § 1226(a) is the appropriate statutory framework to apply to Marquez, the Court must now determine whether his current detention violates his due process rights.

### 1.    *Petitioner's Fifth Amendment Rights*

The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  The Supreme Court has repeatedly held that the Due Process Clause extends to all persons, regardless of citizenship status.  *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025))).  To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test to weigh

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

It is undisputed that Petitioner has a cognizable liberty interest in avoiding detention.  *See Hamdi*, 542 U.S. at 531 (affirming "the fundamental nature of a citizen's right to be free from involuntary confinement by his own government without due process of law[.]").  Indeed, "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause[.]"  *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from

19

government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."). Our immigration law has long recognized that noncitizens have an interest in an individualized hearing prior to detention in connection with immigration proceedings. *See Yamataya v. Fisher*, 189 U.S. 86, 101 (1903). Further, the Supreme Court has previously required individualized hearings for deprivations of interests less fundamental than Petitioner's interest in freedom from detention. *See Goldberg v. Kelly*, 397 U.S. 254, 268 (1970) (requiring an individualized hearing prior to the termination of welfare benefits).

Second, the risk of erroneous deprivation of that interest is high if Petitioner is not afforded a detention hearing. *See Edahi*, 2025 WL 3466682, at *14 (holding that detention "without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest") (citation omitted); *Yao v. Almodovar*, No. 25 Civ. 9983 (PAE), 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (finding that ICE's "discretion-free detention of [the petitioner] abridged his rights under [8 U.S.C.] § 1226 and violated due process") (citations omitted). To date, Petitioner has not had a detention hearing at which his eligibility for bond is determined on the merits of his individual circumstances. Thus, Petitioner's present detention creates a high risk of an erroneous deprivation of his liberty interest. Accordingly, the second *Mathews* factor favors Petitioner.

As to the third factor, Respondents have not put forth any argument whatsoever advocating for the United States' interest. The Court, on its own, concludes that the United States likely has a strong interest in immigration proceedings, but certainly, the "existing statutory and regulatory safeguards" which this Court discussed at length about

20

above, "serve the governmental interest in public safety." *Barrera*, 2025 WL 2690565, at *7 (quoting *Günaydin v. Trump*, No. 25-cv-01151, 2025 WL 1459154, at *10 (D. Minn. May 21, 2025)).  Accordingly, all three factors weigh in favor of Petitioner.  As other courts have concluded, Petitioner's detention without a bond hearing violates the due process rights afforded to him by the Fifth Amendment and he is therefore entitled to an individualized custody determination.

## IV.    CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1)    Petitioner's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2)    Respondents are **ORDERED** to **immediately release** Petitioner, or in the alternative, provide him with a **bond hearing** under 8 U.S.C. § 1226(a) **within seven (7) days of the date of this Order**; and

(3)    Respondent shall file a Status Report with this Court **on or before April 9, 2026** to certify compliance with this Order.  The Status Report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

This 26th day of March, 2026.



Signed By:

*David L. Bunning*

Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-84 MOO re Habeas.docx